IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| SCHUYLER LINE NAVIGATION COMPANY, LLC, | Case No. _____ |
| Plaintiff, | |
| v. | **COMPLAINT** |
| FLUOR AMEC II, LLC, | |
| Defendant. | |

Plaintiff Schuyler Line Navigation Company, LLC ("Schuyler") files this Complaint against Defendant Fluor AMEC II, LLC ("Fluor"), respectfully showing as follows.

**A.  INTRODUCTION**

1. This case involves a contract between Schuyler and Fluor for Schuyler to provide ocean transportation, stevedoring, lighterage, and shipping services for materials to Ascension Island for use in the repair and construction of a military runway on Ascension Island, a remote volcanic island in the South Atlantic Ocean (the "Project").

2. Under the parties' contract, Fluor agreed to pay detention or demurrage charges at contractual rates in the event of unplanned delays in Schuyler's ability to access the port or offload cargo.  Between April 2021 and February 2022, Schuyler submitted six claims to Fluor for detention or demurrage charges attributable to Fluor under the parties' contract.  Despite timely submitting and providing support for its claims, Fluor has failed and refused to pay Schuyler for the detention and demurrage claims.  Fluor's unreasonable conduct and continued breaches of its payment obligations under the Contract have had a severe financial impact on Schuyler.  Schuyler files this action seeking payment for demurrage and detention amounts due and owing by Fluor.

1

**B.    PARTIES**

3.    Plaintiff Schuyler Line Navigation Company, LLC is a small business organized under the laws of the state of Maryland and maintains its principal place of business in Annapolis, Maryland.

4.    Defendant Fluor AMEC II, LLC was organized under the laws of the state of Delaware and maintains its principal place of business in Greensville, South Carolina.  Fluor AMEC II, LLC may be served with process by serving its registered agent, Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808.

**C.    JURISDICTION AND VENUE**

5.    This Court has personal jurisdiction over Fluor because it maintains its principal place of business in South Carolina and regularly conducts business here.  In addition, the Contract at issue provides that the parties "irrevocably agree to submit to the personal jurisdiction of the courts located within the County of Greenville, South Carolina for litigating all such claims or disputes."

6.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1333(1) because the parties' dispute relates to a contract for the provision of transport by sea.

7.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant resides in this judicial district.  Venue is also proper in this Court because the parties' contract provides that "any dispute arising from this Contract shall be brought exclusively in the State or Federal Courts located in the County of Greenville, South Carolina."

**D.     FACTUAL BACKGROUND**

    **1.     Overview of the Project**

    8.     The United States Air Force ("USAF") contracted with Fluor to repair the 10,000-foot asphalt runway and upgrade airfield infrastructure at the Ascension Island Auxiliary Airfield.

    9.     Ascension Island is a remote volcanic island situated in the South Atlantic Ocean near the equator, approximately 1,000 miles from the coast of Africa and 1,400 miles from the coast of South America. In 1815, the British claimed Ascension Island, establishing a Naval garrison on the island. Today one of the four ground antennas that assist in the operation of the Global Positioning System navigational system is located there, as is a NASA observatory used to track orbital debris.

    10.     The Ascension Island Auxiliary Airfield, which was originally built in 1942, serves as a lifeline to the island. The airfield is strategically important and has been used by the USAF and the United Kingdom's Royal Air Force ("RAF") since World War II. The USAF has noted that restoring the auxiliary airfield to its full capability is a critical requirement for the Department of Defense and the UK's Ministry of Defence. The Department of Defense also recently designated the Ascension Island base as a U.S. Space Force Installation.

    **2.     The Parties' Contract.**

    11.     Fluor and Schuyler entered into Contract No. FPAP-KG00002 effective September 11, 2020, for Schuyler to provide ocean transportation and shipping services for materials and certain equipment from North America to Ascension Island for the Project (the "Contract").

    12.     The USAF is the owner of the facility under the Contract. The Ascension Island Government ("AIG") serves as Harbormaster for the port at Ascension Island. However, Fluor could and did exert influence on the order of precedence of vessels at the pier for discharge.

    13.     The Contract contained a not-to-exceed price and contained an original schedule

with Schuyler commencing work on or about August 28, 2020, and completing work by November 1, 2021.

14. The Contract was modified by the parties multiple times. On November 23, 2021, the Parties entered into Contract Modification 10 which adjusted the Contract price and extended the Period of Performance from November 1, 2021, to September 12, 2022. Further, on or about August 23, 2022, the Parties adjusted the Contract price and extended the Period of Performance from September 12, 2022, to December 20, 2022.

15. Schuyler's scope of work under the Contract includes the delivery and offloading of aggregate and sand (collectively, "aggregates") and certain other materials and equipment for use on the Project. Contract Article 3.0.

16. Under the Contract, Schuyler is to discharge aggregates at Georgetown, Ascension Island. Contract, Part I, § 4. A & B. The Contract also provides that Schuyler is to deliver aggregates ashore via the Georgetown pier, using a system of barges, ramps, loaders, and conveyors. Contract, Part I, § 4.D.

17. The Contract contemplated that Schuyler would deliver aggregates in nine shipments from Nova Scotia and two shipments from Florida. Contract, Part I, § 3.4.

18. Under the Contract, "[t]ugboats and barges shall receive the aggregates from the ocean vessel and transport to a shore location and there deliver the aggregates to a shore-side installation." Contract, Part I, § 3.4. The use of transport equipment that is lighter than the weight of ocean vessels, such as barges and tug boats, is referred to as lighterage.

19. This action relates to charges payable by Fluor for unplanned delays in Schuyler's access to the port or its ability to offload (or discharge) cargo from the ship.

20. "Demurrage is a charge payable to the owner of a chartered ship in respect of failure

to load or discharge the ship within the time agreed." Contract, Part II, § 7.9. The related concept of detention refers to charges for using a ship or a shipper's equipment beyond the allotted time (called free time) outside of the terminal, regardless of whether the ship or equipment is loaded or empty.

21. Under the Contract, Fluor agreed to "be liable for demurrage payments to [Schuyler] in the amount of $75,000 per day ($45,000.00 for vessel & $30,000.00 for lighterage equipment) in circumstances where detention of a ship beyond the time specified by a charter party for loading and unloading or for sailing." Contract, Part II, § 5.1.16. The Contract also notes that "[d]emurrage is intended to serve the public interest by facilitating the flow of commerce through the prompt loading and unloading of cargo." *Id.*

22. Fluor also agreed to pay daily detention rates "with the unit rate breakdown of $45,000 for ship and $30,000 for lighterage [for a total of $75,000] for the time period from 28-Aug-2020 through 31-Oct-2021" and "at a unit rate of $45,000 for the time period from 01-Nov-2021 through 12-Sep-2022." Contract, Part II, Schedule A, Rev. 16, p. 6, Note 2.

### 3. Schuyler's Claims for Detention and Demurrage

#### a. Invoice No. KG0002-05-21-037: Detention while Schuyler was prevented from clearing a propeller entanglement

23. On April 30, 2021, Schuyler issued a Detention Report to Fluor for 2.5 days of detention of Schuyler's MV Severn and lighterage detention for its tugs *Marylin M*, *Thomas* and *Ella F* and various operational support equipment after a rope was caught in one of the propeller hubs of *Marilyn M* that occurred on April 27, 2021.

24. Schuyler quickly proposed a solution for divers to free the propeller entanglement and was ready to execute the plan within 90 minutes. Schuyler's on-island operations team responded by (a) organizing and equipping a dive team ready to deploy into the water, (b)

preparing an emergency dive operation safety procedure to mitigate risks and an employment agreement for the lead diver, and (c) providing the Harbormaster with formal written notice of all of the above.

25. However, the Harbormaster refused to allow Schuyler to perform any diving operations while Fluor and the Harbormaster engaged in extensive discussions regarding insurance coverage for risks involved in removing the rope.

26. Schuyler fully cooperated with Fluor and the Harbormaster to resolve the issues as soon as possible. After a two-and-a-half-day delay, Fluor ultimately determined that because the Harbormaster was not a party to the contract with the divers, no additional insurance was required, and Fluor finally gave Schuyler clearance to proceed.

27. Once Fluor gave Schuyler clearance to remove the entanglement, Schuyler's divers were able to clear the obstruction in 15 minutes. Indeed, the unnecessary delay in clearing the entanglement, which resulted in Schuyler's delayed aggregate delivery and offloading, was not caused by Schuyler.

28. On May 10, 2021, Schuyler issued Invoice No. KG0002-05-21-037 in the amount of $187,500.00 as compensation under the Contract for the detention events described above.

29. Despite Schuyler providing Fluor with proper notice and support for the detention amounts as required by the Contract, Fluor has failed and refused the pay the amounts owed to Schuyler.

    b.  **Invoice No. KG0002-07-21-047**: **Detention due to previously unknown priority cargo ship hold and a local holiday**

30. On June 10, 2021, Schuyler issued a Detention Report to Fluor for 3 days of detention of Schuyler's MV Severn and lighterage detention for tugs *Marylin M*, *Thomas*, and *Ella*

*F* and various operational support equipment because discharge priority was given to the USAF vessel *MV Eva Marie* on May 5, 6, and 7, 2021.

31. Fluor had previously represented to Schuyler that its schedule would only be affected by the published and known schedule for USAF liner vessels. The USAF liner schedule for *MV Eva Marie* was unknown to Schuyler, and Schuyler had no control over the USAF's scheduling of its liner service.

32. As a separate detention event, the June 10, 2021 Detention Report also notified Fluor of the detention of Schuyler's *MV Severn* and lighterage for tugs *Marylin M*, *Thomas*, and *Ella F* and various operational support equipment because the discharging port was closed on May 14, 2021, for the Ascension Day holiday.

33. Fluor previously represented to Schuyler that its schedule would be affected by only known public holidays. Because the Project's owner is the USAF, Schuyler based its schedule and Contract price on known U.S. holidays. Fluor never disclosed the unique Ascension Island holiday in its planning documents, RFP, or post-contract communications to Schuyler.

34. On July 2, 2021, Schuyler issued Invoice No. KG0002-07-21-047 in the amount of $300,000.00 as compensation under the Contract for the detention events described above.

35. Despite Schuyler providing Fluor with proper notice and support for the detention amounts as required by the Contract, Fluor has failed and refused the pay the amounts owed to Schuyler.

    c.    **Invoice No. KG0002-07-21-046**: **Detention for discharge priority to another Schuyler vessel caused by Fluor's failure to obtain required approval**

36. On June 14, 2021, Schuyler issued a Detention Report to Fluor for 13 days of detention of Schuyler's *MV Severn* on April 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 19, and 20,

7

2021 because Fluor gave discharge priority to Schuyler's *MV Magothy* for sand discharge while *MV Severn* was forced to sit anchored at Clarence Bay, outside of the Georgetown port.

37.     *MV Magothy* and *MV Severn*, which are both Schuyler vessels, were not scheduled to be at Ascension Island at the same time. Rather, the fact that the two ships were simultaneously at Ascension Island, and the detention of the *Severn* in favor of the *Magothy*, was caused by Fluor's failure to timely obtain approval of its BioSecurity Management and Response Plan ("BMRP").

38.     Fluor was scheduled to obtain AIG's approval of its BMRP in January 2020. But Fluor did not obtain AIG's approval until April 2020, approximately 90 days late.

39.     The *Severn* arrived at Ascension Island on January 9, 2020, as Fluor had scheduled. Before the Severn arrived at Ascension Island, Schuyler had scheduled at least 10 days to practice and test its marine offloading operation using the system of mooring, barges, and conveyors.

40.     Due to Fluor's failure to timely obtain BMRP approval, Schuyler was not authorized by AIG to perform any testing or practice of its mooring system or the handling of loaded barges before Schuyler was required to commence the actual discharge of aggregate.

41.     If Fluor had obtained AIG's approval for the BMRP by January 9, 2020, when the *Severn* first arrived as originally scheduled, the *Severn* would have been completely discharged and departed from Ascension Island by the time the *Magothy* arrived in April 2020, as originally scheduled. But because of Fluor's delay in obtaining approval for the BMRP, the *Severn*'s first day of aggregate discharge using the tugs, barges and conveyor system occurred on April 21, 2020, more than 3 months after *Severn*'s arrival at Ascension Island.

42.     The fact that Fluor took more than 90 additional days to obtain AIG approval of its BMRP is the sole reason the *Severn* was detained in Clarence Bay in favor of the *Magothy* in April 2020.

43. On July 2, 2021, Schuyler issued Invoice No. KG0002-07-21-046 in the amount of $585,000.00 as compensation under the Contract for the detention events described above.

44. Despite Schuyler providing Fluor with proper notice and support for the detention amounts as required by the Contract, Fluor has failed and refused the pay the amounts owed to Schuyler.

        **d.**     **Invoice No. KG0002-03-31-120**:  **Detention due to priority discharge to other non-Schuyler vessels**

45. On October 4, 2021, Schuyler issued a Detention Report to Fluor for 4 days of detention of Schuyler's *MV Corona* caused by pier congestion and Fluor's schedule change to give priority to the new USAF vessel, *MV UAL Cologne*, on September 27-28 and October 1-2, 2021.

46. The October 4, 2021 Detention Report also notified Fluor of a total of 8 days of lighterage detention during pier congestion due to the priority cargo operations of:

    a.    *MV Helena* on September 25-28, 2021;

    b.    RAF supply ship *UAL Houston* on September 27-28, 2021; and

    c.    RAF supply ship *UAL Cologne* on September 30 and October 1-2, 2021.

The congestion caused by the presence of these other ships required *MV Corona* and lighterage equipment to be idle until the consecutive cargo offloading operations of the other vessels concluded.

47. Fluor was aware of and approved the sail schedule for the Schuyler's *MV Corona* to Ascension Island. The simultaneous presence of the *MV Helena* and the RAF supply ships at the same time the Corona was at Ascension Island was never disclosed by Fluor in advance of this detention event.

48. Schuyler was previously unaware of the schedule of these other vessels. And despite its prior knowledge, Fluor never requested Schuyler to change its shipping voyage schedule

9

to mitigate the discharge impact of these other vessels.

49.     On March 31, 2022, Schuyler issued Invoice No. KG0002-03-31-120 in the amount of $420,000.00 as compensation under the Contract for the detention events described above.

50.     Despite Schuyler providing Fluor with proper notice and support for the detention amounts as required by the Contract, Fluor has failed and refused the pay the amounts owed to Schuyler.

      e.     **Invoice No. KG0002-03-31-119**: Detention due to pier closure for inspection of cranes and lifting equipment

51.     On October 21, 2021, Schuyler issued a Detention Report to Fluor for 1 day of detention of *MV Corona* and lighterage detention during a pier closure due to the Harbormaster's inspection of cranes and lifting equipment on October 16, 2021.

52.     The October 21, 2021 Detention Report also notified Fluor of one-half day of lighterage detention to comply with a wastewater disposal directive from Fluor requiring Schuyler to stop its pier discharge operation and engage in wastewater disposal from tug vessels on October 18, 2021.

53.     Fluor was aware of and approved the sail schedule for the *MV Corona* to Ascension Island. Fluor never requested Schuyler to change its shipping voyage schedule to mitigate the discharge impact of the pier closure or the wastewater disposal directive.

54.     October 16, 2021 was not previously scheduled or intended to be a non-discharge day. The *Corona* was forced to stop its discharge operation when Fluor unexpectedly provided written notice to cease operations in October 2021, despite approving the *Corona*'s schedule approximately one year earlier.

55.     On March 31, 2022, Schuyler issued Invoice No. KG0002-03-31-119 in the amount of $90,000.00 as compensation under the Contract for the detention events described above.

10

56. Despite Schuyler providing Fluor with proper notice and support for the detention amounts as required by the Contract, Fluor has failed and refused the pay the amounts owed to Schuyler.

### f. **Invoice No. KG0002-03-31-113**:  Demurrage due to port congestion in Nova Scotia

57. On February 25, 2022, Schuyler issued a Demurrage Report to Fluor for 15 days and 22:51 hours of demurrage of *MV Severn* in Nova Scotia, Canada for delay due to port congestion occurring in February 2022 and resulting in the *Severn*'s inability to timely berth and load.

58. Schuyler's *MV Severn* arrived at Aulds Cove in Nova Scotia on February 3, 2022, to load 55,000 metric tons of aggregate for use at the Project. The shipping schedule submitted to Fluor reported a load date range of February 4-6, 2022, for this voyage.

59. The *Severn* issued its Notice of Readiness ("NOR") on February 3, 2022, at 23:54 and provided a copy of the NOR to Fluor. Additionally, Schuyler informed Fluor that other ships that arrived at Aulds Cove after the Severn were loaded before the *Severn*.

60. As a result, demurrage commenced at the expiration of the scheduled load date range on February 6, 2022, at 23:27. After issuing its NOR, the *Severn* sat anchored waiting to be called into position to load, which did not commence until February 19, 2022, at 03:48. The demurrage ended on February 22, 2022, at 22:18 when the *Severn* was fully loaded.

61. On March 1, 2022, Schuyler issued Invoice No. KG0002-03-31-113 in the amount of $717,843.75 as compensation under the Contract for the demurrage events described above.

62. Despite Schuyler providing Fluor with proper notice and support for the demurrage amounts as required by the Contract, Fluor paid only a portion of the amount invoiced and has failed and refused the pay the remaining amounts owed to Schuyler.

11

      **g.**    **Notice of Schuyler's claims for detention and demurrage**

63. In addition to the reports and invoices described above, on April 20, 2022, Schuyler provided Fluor with written notice of Schuyler's election to pursue all outstanding and unpaid amounts for detention and demurrage of the six claims described above pursuant to Section 18.1 of the Contract, Part III.

64. On April 22, 2022, Fluor issued an Acknowledgment of Receipt of Schuyler's April 20, 2022 notice letter.

65. On April 29, 2022, Schuyler provided Fluor with documents supporting the cost effect of the six claims identified above as required under Section 18.1 of the Contract, Part III. Schuyler had previously provided Fluor with virtually all the supporting documents for its claims at the time that Schuyler first reported each of the detention or demurrage events.

66. On May 27, 2022, Fluor responded to Schuyler's April 20, 2022 letter indicating that Fluor continued to dispute Schuyler's unpaid claims.

67. On June 2, 2022, Schuyler provided notice that it disputes Fluor's determination of Schuyler's claims and intended to resolve this dispute pursuant to Article 50.0 of the Contract.

68. Fluor has continued to refuse to pay the amounts owed for detention and demurrage under the Contract.

69. Schuyler has performed all conditions precedent to the recovery of its claims under the Contract.

**E.**    **CAUSE OF ACTION**

    **1.**    **Breach of Contract**

70. Schuyler incorporates and realleges the preceding allegations as if fully set forth below.

71. As discussed above, Schuyler and Fluor entered into an enforceable Contract to

provide ocean transportation and shipping services for materials to Ascension Island for the Project.

72. As described above, Schuyler submitted valid claims for detention and demurrage under the Contract, and Fluor breached the Contract by failing to pay Schuyler's claims.

73. Schuyler has been damaged and is entitled to recover the amounts Fluor owes for its breach of the Contract.

### 2. Breach of Contract Accompanied by a Fraudulent Act

74. Schuyler incorporates and realleges the preceding allegations as if fully set forth below.

75. As discussed above, Fluor has breached the Contract by failing to pay Schuyler's claims for detention and demurrage.

76. Fluor's breach was accomplished with a fraudulent intention. Fluor withheld and failed to disclose to Schuyler material information about the costs of performing Schuyler's scope of work under the Contract, thereby causing Schuyler to incur unanticipated and unnecessary costs.

77. Fluor's breach was accompanied by fraudulent acts involving dishonesty in fact and unfair dealing. Among other things, Fluor failed to disclose that vessels other than those owned or operated by Schuyler and the USAF would use the port at Ascension Island at the same time as Schuyler, causing undue delays and congestion. Fluor also failed to disclose to Schuyler the dates on which the pier would be closed due to holidays or days on which discharge was not permitted. Fluor further misrepresented to Schuyler that it would timely obtain approval of its BMRP, which was required for Schuyler to timely perform its deliveries of materials to Ascension Island.

78. Fluor's breach of the Contract accompanied by a fraudulent act caused Schuyler to incur increased costs that were not anticipated and for which Fluor now claims it is not responsible

under the Contract.

79. Schuyler is entitled to recover its damages and punitive damages as a result of Fluor's breach of the Contract accompanied by a fraudulent act.

F. **REQUEST FOR RELIEF**

80. Plaintiff Schuyler respectfully requests that it be awarded a judgment against Defendant Fluor including the following relief:

a. damages in the amount of Plaintiff's claims for detention and demurrage under the Contract;

b. punitive damages against Defendant;

c. pre-judgment and post-judgment interest at the highest allowable rate;

d. costs; and

e. all other relief as may be just and proper.

Respectfully Submitted,

*s/ James E. Cox, Jr.*
James E. Cox, Jr. (D.S.C. Id. No. 13054)
WYCHE, P.A.
200 East Broad Street, Suite 400
Greenville, SC 29601-2892
jcox@wyche.com
Phone: 864-242-8212
Fax: (864) 295-3940

Mike Stenglein
Application for *Pro Hac Vice* forthcoming
Texas Bar No. 00791729
mstenglein@kslaw.com
Christopher H. Taylor
Application for *Pro Hac Vice* forthcoming
Texas Bar No. 24013606
ctaylor@kslaw.com
Matt Vandenberg
Application for *Pro Hac Vice* forthcoming
Texas Bar No. 24079501
mvandenberg@kslaw.com
KING & SPALDING LLP
500 West 2nd Street, Suite 1800
Austin, Texas 78701
(512) 457-2000 (telephone)

Benjamin T. Jones
Application for *Pro Hac Vice* forthcoming
California Bar No. 274409
bjones@kslaw.com
KING & SPALDING LLP
50 California St
Suite 3300
San Francisco, CA 94111
(415) 318-1278

**ATTORNEYS FOR PLAINTIFF SCHUYLER LINE NAVIGATION COMPANY, LLC**

Dated: November 22, 2022